UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Stephen J. Adams, II, et al.,<br>Plaintiffs<br>v.<br>Centuri Group, Inc.,<br>Defendant | Case No. 2:26-cv-00045-CDS-MDC<br>**Order Granting Defendant's Motion to Dismiss**<br>[ECF No. 14] |

Plaintiffs Stephen J. Adams, II and Robert C. Lyons bring this breach of contract and related claims action against their former employer, Centuri Group, Inc. *See* Compl., ECF No. 4-1. Adams and Lyons seek to recover severance benefits, which they allege Centuri wrongfully denied. *Id.* at 3–4. Centuri removed this action from the Eighth Judicial District Court on January 9, 2026. Pet. for rem., ECF Nos. 1, 4.[1] Centuri moves to dismiss the complaint with prejudice, arguing that the plaintiffs failed to sufficiently state their claims. *See* Mot., ECF No. 14. The plaintiffs oppose the motion. Opp'n, ECF No. 21. The motion is fully briefed. Reply, ECF No. 26. For the reasons set forth herein, I grant the motion to dismiss without prejudice and with leave to amend.

## I. The allegations

As set forth in the complaint, the plaintiffs are former employees and executives of Centuri, a utility services business that partners with regulated utilities to build and maintain energy networks. *See* ECF No. 4-1 at 3, ¶¶ 6–8. As part of their employment, both plaintiffs signed "Employment Agreements" (EAs) with Centuri, which entitled them to certain severance benefits in the event their employment was terminated prior to a "Change of Control," and if their termination "occurred in connection with, or in furtherance of" a "Change of Control." *Id.* at ¶¶ 9–11. A Change of in Control includes "the acquisition (other than by a member of the

[1] ECF Nos. 1 and 4 are duplicative. For ease, I only refer to ECF No. 4 herein.

Employer Group) of more than fifty percent (50%) of the stock of Centuri by a group of shareholders." *Id.* at ¶ 11.

As alleged, a Change of Control occurred on September 5, 2025. On that date, Centuri was primarily owned and controlled by Southwest Gas Holdings, Inc. (SWX) until SWX completed its exit from Centuri "by selling all of its remaining shares of Centuri's common stock via an underwritten public offering." *Id.* at ¶ 12. The plaintiffs further allege that they were terminated before there was that Change of Control, and that their termination occurred "in connection with, or in furtherance of" that Change of Control. *Id.* at ¶ 14. Thus, the plaintiffs assert they are owed severance benefits under the EA, which Centuri refuses to pay. *Id.* at ¶¶ 15–16. As a result, they brought this action alleging three claims: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) tortious breach of the covenant of good faith and fair dealing. *See* ECF No. 4-1 at 4–6.

## II. Legal standard

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.

Accordingly, Fed. R. Civ. P. 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Fed. R. Civ. P. 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178 (1962).

## III. Discussion

As a threshold matter, I note that because the plaintiffs' "Employment Agreements" are specifically referenced in the complaint, were attached to Centuri's motion to dismiss, and there is no objection to their consideration by the plaintiffs, I can consider the EAs without converting the motion to dismiss into a motion for summary judgment. *See Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994) (explaining that materials not submitted as part of the complaint can be considered as part of a Rule 12(b)(6) motion without converting the motion into a motion for summary judgment if the complaint refers to the document and no party questions the authenticity of the copy attached to the motion), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

I therefore turn and address the merits of the motion. Centuri contends that all three claims in the complaint must be dismissed with prejudice. ECF No. 14. Each claim is addressed in turn.

### A. Defendant's motion to dismiss the breach of contract claim is granted.

In Nevada, to bring a breach of contract claim, a plaintiff must show: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Med.*

*Providers Fin. Corp. II v. New Life Centers, L.L.C.*, 818 F. Supp. 2d 1271, 1274 (D. Nev. 2011). Further, a contract is valid and enforceable if there has been "an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).

Here, the plaintiffs allege that until September 5, 2025, Centuri was primarily owned and controlled by SWX. ECF No. 4-1 at 3, ¶ 12. But on that date, SWX had completed its exit from Centuri "by selling all of its remaining shares of Centuri's common stock via an underwritten public offering." *Id.* at 4, ¶ 12. The plaintiffs further allege that they were terminated before there was a Change of Control, and that their termination occurred "in connection with, or in furtherance of" that Change of Control. *Id.* at 4, ¶ 14.

The parties do not dispute the existence of a valid contract—the EAs. Rather, the dispute lies with whether there was a breach of those agreements. The defendant contends there was no Change in Control,[2] so there was no breach. Specifically, Centuri argues that there was no Change in Control "because [SWX's sale of its Centuri common stock] did not result in a 'group of shareholders' or an 'entity' acquiring over 50% of Centuri's stock" and because "[p]laintiffs' terminations were not 'in furtherance' of any Change in Control." ECF No. 14 at 6. Centuri thus contends that the complaint is misleading because, while SWX sold 50% of its Centuri stock, that is only part of what's required for a Change in Control to occur. *Id.* They aver the plaintiffs omitted an additional requirement, that is that a "group of shareholders" or an "entity" must acquire more than 50% share of Centuri. *Id.* (citing Adams EA, ECF No. 15-1; Lyons EA, ECF No. 15-2). Centuri asserts that their failure "to identify a group or entity that acquired a majority stake in Centuri following SWX's offering of Centuri stock is fatal to their breach of contract claim." *Id.* at 7.

The plaintiffs aver that Centuri's motion is both "misguided and self-defeating," because, despite its insistence that the court apply the plain language of the EAs, Centuri relies on terms

[2] While the complaint alleges a "Change of Control," the EA uses the phrase "Change in Control," so I use that phrase for the remainder of this order.

and conditions not found therein. *See* ECF No. 21 at 1, 6. Simply stated, the plaintiffs assert that what constitutes a Change in Control is plainly stated, and neither EA requires that shareholders be "coordinated or organized." *Id.* at 6–7 (emphasis removed).

The EAs define "Change in Control" as follows:

> (1) the sale (other than to a member of the Employer Group) of substantially all of the operating assets of (a) Centuri and its subsidiaries or (b) the Parent Company and its subsidiaries, (2) **the acquisition (other than by a member of the Employer Group) of more than fifty percent (50%) of the stock of Centuri by a group of shareholders or an entity which acquires control of Centuri,** (3) a merger or consolidation of Centuri with any other entity, other than a merger or consolidation which would result in the voting securities of Centuri outstanding immediately prior thereto continuing to represent (either by remaining outstanding or by being converted into voting securities of the surviving entity) fifty percent (50%) or more of the total voting power represented by the voting securities of Centuri or such surviving entity outstanding immediately after such merger or consolidation, (4) a merger or consolidation of Parent Company with any other entity, other than a merger or consolidation which would result in the voting securities of Parent Company outstanding immediately prior thereto continuing to represent (either by remaining outstanding or by being converted into voting securities of the surviving entity) fifty percent (50%) or more of the total voting power represented by the voting securities of Parent Company or such surviving entity outstanding immediately after such merger or consolidation, (5) any "person" (as such term is used in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), but excluding any person described in and satisfying the conditions of Rule 13d-1(b)(I) thereunder), becomes the beneficial owner (as defined in Rule 13d-3 under the Exchange Act), directly or indirectly, of securities of the Parent Company representing more than 30% of the combined voting power of the Parent Company's then outstanding securities entitled to then vote generally in the election of directors of the Parent Company, or (6) during any period not longer than two (2) consecutive years, individuals who at the beginning of such period constituted the board of directors of the Parent Company cease to constitute at least a majority thereof, unless the election, or the nomination for election by the Parent Company's shareholders, of each new board member was approved by a vote of at least three-fourths (3/4) of the board members then still in office who were board members at the beginning of such period (including for these purposes, new members whose election was so approved). For purposes of this Agreement, "Parent Company" shall mean Southwest Gas Holdings, Inc.

ECF No. 15-1 at 5; ECF No. 15-2 at 5 (emphases removed and added).

The plaintiffs misapprehend Centuri's argument. Centuri is not arguing that a Change in Control must be "coordinated or organized." Rather, it is asserting that the plain language of the EAs states that one way for a Change in Control is for "the acquisition (other than by a member of the Employer Group) of more than fifty percent (50%) of the stock of Centuri by a group of shareholders or an entity which acquires control of Centuri." ECF No. 15-1 at 5; ECF No. 15-2 at 5. This is indeed a requirement set forth in the EAs. Thus, while the complaint explains that SWX sold its common stock, which was more than 50% of Centuri's stock, it does not allege that a group of shareholders or an entity acquired more than a 50% share of Centuri common stock, so the motion is granted as to the breach of contract for this pleading defect.[3]

Accordingly, Century's motion to dismiss the breach of contract claim is granted. However, considering Rule 15's liberal amendment standard, because it is not wholly clear that amendment would be futile, dismissal is granted without prejudice and with leave to amend.

**B. The contractual breach of the covenant of good faith and fair dealing claim is dismissed.**

In Nevada, a contractual[4] breach of the implied covenant of good faith and fair dealing occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991). "Whether the controlling party's actions fall outside the reasonable expectations of the dependent party is determined by the various factors and special circumstances that shape these expectations." *Id.* at 923–924. So, a party sufficiently

[3] Centuri also argues that a Change in Control "occurs when the ability to control the decision making mechanism of an entity shifts from one individual or group to another" and that the plaintiffs fail to allege a Change in Control because the shareholders who purchased the Centuri stock were not alleged to have decision-making authority. *Id.* (citing *Gilliam v. Nev. Power Co.*, 488 F.3d 1189 (9th Cir. 2007)). But Centuri cites no points or authorities to support its position that failing to include those specific allegations somehow warrants dismissal. *See* Local Rule 7-2(d) ("The failure of a moving party to file points and authorities in support of the motion constitutes a consent to the denial of the motion."). So Centuri's motion to dismiss the breach of contract claim based on this argument is denied.

[4] A contractual breach permits the recovery of contract damages whereas a tortious breach permits the recovery of tort damages. *See A.C. Shaw Constr., Inc. v. Washoe County*, 784 P.2d 9, 10 (Nev. 1989).

alleges a breach of the implied covenant by identifying the contract that forms the basis for the claim, identifying the conduct that constitutes breach of the covenant, and alleging that the breach caused the party damage. *See Morris v. Bank of Am. Nev.*, 886 P.2d 454, 457 (Nev. 1994). But a claim alleging breach of the implied covenant of good faith and fair dealing cannot be based on the same conduct establishing a separately pled breach of contract claim. *See Stebbins v. Geico Ins. Agency*, 2019 WL 281281, at *2 (D. Nev. Jan. 22, 2019).

Here, the plaintiffs allege, in total, that Centuri breached the covenant "by, among other ways, misrepresenting the nature of SWX's sale of its controlling interest in Centuri; thus frustrating Plaintiffs' reasonable and specific expectations under the Employment Agreements." ECF No. 4-1 at 5. However, it is not clear from those allegations what the contents of the communication from SWX were regarding the sale of its controlling interest. It is also not clear what the plaintiffs' expectations were under the EAs nor the factors and special circumstances that shaped those expectations. So the defendant's motion to dismiss claim two is granted without prejudice and with leave to amend. I note, however, that while I am permitting the plaintiffs to amend their complaint, I am not suggesting that the plaintiffs can succeed on their breach of contract claim and their contractual breach of the implied covenant claim based on the same conduct. *See Stebbins*, 2019 WL 281281, at *2.

**C. The tortious breach of the covenant of good faith and fair dealing claim is dismissed.**

In Nevada, tort damages for a breach of the covenant of good faith and fair dealing may be allowed in instances of bad faith discharge where there is a special relationship between the parties and the employer's conduct goes "well beyond the bounds of ordinary liability for breach of contract." *Martin v. Sears, Roebuck & Co.*, 899 P.2d 551, 555 (Nev. 1995) (quoting *K Mart Corp v. Ponsock*, 732 P.2d 1364, 1370 (1987)). However, a claim for tortious breach of the covenant of good faith and fair dealing requires more than the breach of an employment contract; there must also be evidence of a "special relationship in which special reliance, trust and dependency is part."

*Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 910 (D. Nev. 1993) (citing *K Mart Corp*, 732 P.2d at 1372)). A "special relationship" does not typically arise in the context of an employer-employee relationship, but such a relationship may arise where there's a "skewed balance of power between the parties and the heavy reliance . . . by one party on the other" exists. *Id.*

Here, the plaintiffs do not allege a special relationship, nor are there sufficient allegations for the court to infer such a relationship. Consequently, the defendant's motion to dismiss the tortious breach of the covenant of good faith and fair dealing claim is granted without prejudice and with leave to amend.

**IV. Conclusion**

IT IS HEREBY ORDERED that the defendant's motion to dismiss **[ECF No. 14] is GRANTED**. The plaintiffs must file an amended complaint by October 13, 2026. Failure to do so will result in dismissal without further notice.

Dated: September 25, 2026

________________________________

Cristina D. Silva
United States District Judge